■ PPF SAFEGUARD, LLC, et al., Appellants, v BCR SAFEGUARD HOLDING, LLC, et al., Respondents. [924 NYS2d 391]—

Order, Supreme Court, New York County (Bernard J. Fried, J.), entered September 19, 2010, which, insofar as appealed from, denied plaintiffs' motion for partial summary judgment on their first cause of action for breach of an indemnity agreement and their fourth cause of action for a declaration that defendants must honor their obligations to indemnify plaintiffs for any covered payments due to any employees under the employment agreements and the side letter agreements, unanimously reversed, on the law, without costs, the motion granted, and it is declared that defendants must honor their obligations to indemnify plaintiffs for any covered payments due to any employees under the employment and side letter agreements.

The issue before us is whether defendants raise a viable "frustration of purpose" defense to plaintiffs' contractual indemnification claims. We hold that the defense is insufficient to defeat summary judgment.

On May 31, 2005, the parties consummated a transaction under which plaintiff PPF Safeguard, LLC (PPF) purchased a 94% interest in plaintiff Safeguard Storage Properties, LLC (Safeguard), a self-storage business which at the time was headquartered in New Orleans. After the PPF acquisition, the remaining six percent interest in Safeguard was held by the three defendant limited liability companies (the LLC defendants), all of which were controlled by individual defendants Bruce Roch and Jack Chaney. In connection with the transaction, Safeguard, PPF, and the LLC defendants entered into a securities purchase agreement, and PPF and the LLC defendants entered into an amended & restated LLC agreement setting forth Safeguard's governance and operation. Pursuant to the LLC agreement, Roch remained the company's chief executive officer and Chaney remained its chief operations officer. PPF's management role in Safeguard was limited.

Also on May 31, 2005, the LLC defendants, Safeguard and PPF entered into the indemnity agreement at issue in this appeal. The "Recitals" section of the agreement states that, before the PPF acquisition, Safeguard had entered into agreements with current and former Safeguard employees (the employment agreements) which provided them with the right under certain circumstances to receive extra compensation which the employment agreements variously describe as incentive compensation,

bonus payments, and participation payments (collectively, bonuses). The indemnity agreement further recites that, "[a]s a condition of PPF entering into the Securities Purchase Agreement and the [amended & restated LLC agreement]," the LLC defendants agree to indemnify Safeguard from liabilities arising from the bonus provisions in the employment agreements and "make good faith efforts to negotiate a termination of the [bonus] provisions of the [e]mployment [a]greements and replace them with alternative bonus arrangements paid for by [the LLC defendants] and acceptable to PPF."

Article II of the indemnity agreement specifically requires the LLC defendants to pay any obligations owed by Safeguard for bonuses under the employment agreements and to indemnify Safeguard and PPF from all claims in connection with the bonuses. The indemnity provision also holds the LLC defendants responsible for interest on the indemnified amounts and PPF's legal fees, costs, and expenses with respect to enforcing the agreement.

In section 3.1 of the indemnity agreement, the LLC defendants agree that they shall use good faith efforts to terminate the bonus arrangements with two former Safeguard employees, with any settlement amount to be paid by the LLC defendants. With respect to the three current employees, the LLC defendants agree to renegotiate their present bonus arrangements and substitute alternative arrangements for which the LLC defendants and not Safeguard would be responsible.

In August 2005, Hurricane Katrina struck the Gulf Coast and disrupted Safeguard's operations in New Orleans. By that time, the LLC defendants had attempted but were unable to renegotiate the existing bonus arrangements. Between 2006 and 2009, multiple bonus payments to two employees, Jeff Ottmar and Jim Goonan, became due under their employment agreements, and as defendants admit, rather than have the LLC defendants pay the bonuses, Roch and Chaney caused Safeguard to pay Ottmar and Goonan without PPF's knowledge.

In July 2009, PPF acquired the LLC defendants' remaining interests in Safeguard and installed its own management. At that point, PPF learned of the payments to Ottmar and Goonan, and in October 2009 Safeguard's new president and chief executive officer wrote to Roch and Chaney, individually and in their capacities as the sole members of the LLC defendants, demanding reimbursement of the bonuses plus interest, an amount which Safeguard calculated at about $382,000. When defendants failed to make any payments, plaintiffs filed this lawsuit in November 2009 seeking damages for the amount due under the

indemnity agreement, along with a declaration that the LLC defendants remained liable for any future bonuses paid under the employment agreements.

Thereafter, plaintiffs moved for an order granting partial summary judgment as against the LLC defendants, who argued in opposition that they were only obliged to indemnify plaintiffs if they failed to make good faith efforts to renegotiate the bonus arrangements in the employment agreements, that their obligations ended when they sold all their remaining interest in Safeguard to PPF, and that their obligations under the indemnity agreement should be excused because Hurricane Katrina frustrated the purpose of the contract.

The motion court properly rejected the first two arguments. It found that the indemnity agreement unambiguously provided that the LLC defendants' obligation to indemnify was independent of its separate obligation to attempt to renegotiate the employment agreements. The court also concluded that whether the LLC defendants still owned an interest in Safeguard had no bearing on whether they were contractually obligated to indemnify plaintiffs.

However, the motion court denied plaintiffs summary judgment on the ground that the LLC defendants had raised a factual issue as to whether their performance was excused because Hurricane Katrina frustrated the purpose of the indemnity agreement. The court accepted extrinsic evidence, in the form of the affidavit of Bruce Roch, that the hurricane made it impossible for the LLC defendants to renegotiate the employment agreements successfully, which Roch contended was the parties' purpose in entering into the indemnity agreement.

Summary judgment should have been granted because the frustration of purpose defense is unavailing. For a party to a contract to invoke frustration of purpose as a defense for nonperformance, "the frustrated purpose must be so completely the basis of the contract that, as both parties understood, without it, the transaction would have made little sense" (*Crown IT Servs., Inc. v Koval-Olsen,* 11 AD3d 263, 265 [2004]; *see also* Restatement [Second] of Contracts § 265). The doctrine applies "when a change in circumstances makes one party's performance virtually worthless to the other, frustrating his purpose in making the contract" (Restatement [Second] of Contracts § 265, Comment *a*).

The purpose of the indemnity agreement is evident from the plain language of the contract: to induce PPF to purchase an interest in Safeguard, the LLC defendants agreed to be responsible for bonus payments under the employment agree-

ments. Given the purpose of the indemnity agreement, Hurricane Katrina had no effect on the value to the LLC defendants of PPF's performance under the contract, namely PPF's execution of the securities purchase agreement and the amended & restated LLC agreement and its completion of the acquisition.

Since the parties' intent was clearly expressed within the four corners of their writing, Roch's self-serving affidavit should not have been considered (*see W.W.W. Assoc. v Giancontieri*, 77 NY2d 157, 162 [1990]).

Accordingly, we reverse. Concur—Saxe, J.P., Friedman, Freedman and Richter, JJ.